IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ANTHONY KRAH, | No. C 08-0038 WHA (PR) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO STRIKE; REFERRING CASE TO FEDERAL PRO BONO PROJECT** |
| v. | |
| DEPUTY MATTHEW CROOK; COUNTY OF SONOMA, | |
| Defendants. / | **(Docket Nos. 20, 29, 30)** |

## INTRODUCTION

This is a civil rights case filed pro se by a plaintiff who is detained at Coalinga State Hospital as a sexually violent predator. He claims that while he was being admitted to Sonoma County Jail in July 2007, defendant Deputy Matthew Crook used excessive force against him. Defendants Crook and the County of Sonoma have filed a motion for summary judgment. Plaintiff has filed an opposition to defendants' motion and a cross-motion for summary judgment. Defendants have filed a reply to plaintiff's opposition and an opposition to plaintiff's motion. Plaintiff has also filed a motion to strike two declarations that were filed in support of defendants' motion.

For the reasons set out below, defendants' motion for summary judgment is **DENIED IN PART AND GRANTED IN PART**, plaintiff's cross-motion for summary judgment and motion to strike are **DENIED**, and the case is referred to the Federal Pro Bono Project to locate pro bono counsel to be appointed for plaintiff.

**STATEMENT**

On July 30, 2007, plaintiff was transported from Coalinga State Hospital to the Sonoma County Jail for civil commitment proceedings in the Sonoma County Superior Court (Krah Decl. ¶ 3). Between midnight and 1:00 a.m. on July 31, plaintiff was processed at the jail's intake section, where Deputy Crook was working (*id.* ¶ 4; Crook Decl. ¶¶ 2-4). At the time, plaintiff was 77 years old, 5' 2" tall, and weighed 135 pounds, and Crook was approximately 6'5 5" tall and weighed approximately 250 pounds (Krah Decl. ¶ 6). Crook conducted a pat search of plaintiff, in accordance with jail policy requiring a search of everyone who enters the jail (Crook Decl. ¶ 4). Plaintiff and defendants offer diverging accounts of what transpired during the course of the search.

. According to plaintiff, Crook took of one his shoes without releasing the straps, causing plaintiff a lot of pain, and plaintiff asked him not to do that again (Krah. Decl. ¶ 5). Plaintiff told Crook that he did not believe that he needed to be searched because he had been at the jail three times previously and had been in continuous custody ever since (*id.* ¶ 7). Crook grabbed plaintiff and squeezed and twisted his body, causing pain (*id.* ¶ 9). Then Crook grabbed plaintiff's head, pushed it down and "bounced" it off of a brick windowsill, causing a cut next to plaintiff's right eye and breaking his glasses (*id.* ¶ 10). Plaintiff tried to stop Crook from further hurting his head, and Crook twisted his left arm and caused enough pain to put plaintiff on the ground (*id.* ¶¶ 11-12). Crook then stood on plaintiff's legs and twisted and bent his arms and wrists "with enough force to break them," until plaintiff cried out and Crook let him go (*id.* ¶¶ 13-15). A medic came and wiped the blood from plaintiff's face and applied a bandage over the cut (*id.* ¶ 17). Plaintiff states that at no time did he pose a physical threat or danger to anyone present (*id.* ¶ 21). Plaintiff has submitted the declaration of another inmate, Thomas Putney, who was being processed at the jail intake section with plaintiff and who witnessed the incident between Crook and plaintiff (Putney Decl. ¶¶ 4-5). Putney corroborates plaintiff's account (*id.* ¶¶ 6-18).

According to defendants, Crook had to remove plaintiff's shoes as part of the pat search

(Crook Decl. ¶ 4). Plaintiff became upset, and Crook interpreted plaintiff's hostility to mean that plaintiff was attempting to hide something, including possibly a weapon (*ibid.*). Crook told plaintiff to stand up and turn around to face the window, which plaintiff did, but he kept trying to turn back around to face Crook saying, the search was "bullshit" and "not necessary" in "loud and angry" tones (*ibid.*). Crook took hold of plaintiff's left arm in a "control hold" and "applied pressure" to push him against the wall and control him (*ibid.*). This was the lowest level of force used when verbal commands are not followed (*ibid.*). Crook told plaintiff to follow his instructions while he conducted the search, but plaintiff continued to argue and "threatened" him by saying "I can't wait to see you on the street" (*ibid.*). Crook completed the search and noticed a "small" cut on plaintiff's eye, and a nurse applied a "Band-Aid" to the cut (*ibid.*). Defendants have submitted the declaration of Deputy Jonathan Devault, who was an eyewitness to the encounter and who corroborates Crook's account (Devault Decl. ¶¶ 1-4).

## ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial *Ibid.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid.*

**B.     PLAINTIFF'S CLAIMS**

Plaintiff claims that Crook used excessive force against him, in violation of his constitutional rights. Defendants argue in their motion that Crook is entitled to summary judgment because on the undisputed facts he did not violate plaintiff's constitutional rights, and, alternatively, he is entitled to qualified immunity. Defendants also argue that there is no triable issue of fact that Sonoma County is liable for Crook's alleged use of excessive force.

### 1.     Defendant Crook

Defendants argue that Crook is entitled to qualified immunity. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Ibid.* Regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Ibid.*

Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In determining whether the use of force was excessive under the Eighth Amendment, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 7.

4

It is unclear whether the excessive force claims of plaintiff, who is a civil detainee, are evaluated under the Eighth Amendment, or whether he enjoys the greater protections of the Fourteenth Amendment. In *Hydrick v. Hunter*, 500 F.3d 978, 983, 997-98 (9th Cir. 2007), the Ninth Circuit held that sexually violent predators' excessive force claims are evaluated under the more generous Fourteenth Amendment standard; if they show conduct by defendants that sinks *below* those protections afforded prisoners under the Eighth Amendment, then they have certainly shown a violation of their rights under the Fourteenth Amendment. *Hydrick* was summarily reversed by the United States Supreme Court on separate grounds, namely that it did not adhere to the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *Hunter v. Hydrick*, 129 S. Ct. 2431 (2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009) (setting forth Rule 8 pleading requirements). The Ninth Circuit has not since addressed the standard applicable to excessive force claims by civil detainees, such as plaintiff. The issue need not be decided here, however, because for the reasons discussed below, there are genuine issues of material fact as to whether the amount of force used by Crook was excessive under the Eighth Amendment. Therefore, if the more generous Fourteenth Amendment standard is applied, plaintiff's excessive force claim certainly survives summary judgment under that standard as well.

Taking the evidence submitted by plaintiff in the complaint as true, and drawing all inferences therefrom in plaintiff's favor, as is required at this stage under *Saucier*, there is a triable issue of fact as to whether Crook's use of force was excessive. According to plaintiff and Putney, Crook grabbed plaintiff's head from behind and either "slammed" or "bounced" it against a brick windowsill (Krah Decl. ¶ 10; Putney Decl. 13). Although plaintiff had verbally objected to the search, he had already turned around and was facing away from Crook, he was not physically resisting Crook, and he did not threaten Cook or anyone else who was present when Crook slammed his head. Accepting this account of as true, an inference could certainly be drawn that even if Crook needed to further control plaintiff, who was 77 years older and much smaller than Crook, he could have done so without slamming his head into a brick windowsill, and that he slammed plaintiff's head maliciously in order to inflict pain on plaintiff.

A similar inference could be drawn from plaintiff's account of what Crook did after he brought plaintiff to the ground. Plaintiff indicates that after Crook slammed his head, plaintiff resisted Crook to prevent further damage. Crook would certainly need to use some force at that point to overcome plaintiff's resistance, and according to plaintiff, Crook then twisted plaintiff's arm and brought him to the ground and stood on his legs. Plaintiff states, however, that Crook then went on to twist and bend plaintiff's wrists and arms "with enough force to break them" (Krah Decl. ¶ 13). Although plaintiff's arms and wrists were not actually broken, accepting plaintiff's account as true an inference could be drawn that Crook twisted and bent his harms with a substantial amount of force that was more than necessary given the fact plaintiff was already on the ground and under Crook's control.

Defendants contend that the lack of serious injury establishes that the amount of force was proper. According to plaintiff and Putney, however, plaintiff suffered a gash near his eye, his glasses were broken, and blood was running down his face (*id.* ¶ 10; Putney Decl. ¶ 18). Moreover, while the extent of injury suffered is a factor to be considered in determining whether the use of force is constitutionally excessive, no serious injury is necessary for the Eighth Amendment to be violated. *Hudson*, 503 U.S. at 7-8; *see Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991) (holding degree of injury does not makes out violation of Eighth Amendment, rather use of official force that is intentional, unjustified, brutal and offensive to human dignity). The fact that plaintiff did not suffer more serious injuries does not preclude a finding that Crook used excessive force given the other circumstances described in plaintiff's evidence. Defendants also argue that the court should find that plaintiff and Putney lack credibility.

Moreover, the case law at the time of Crook's actions in this case, in 2007, clearly prohibited slamming the head of a diminutive 77-year-old plaintiff into a brick windowsill when plaintiff was not physically resisting or threatening, and thereafter twisting and bending plaintiff's arms and wrists nearly to the point of breaking them while plaintiff was on the ground and Crook was standing on his legs. *See, e.g., Watts v. McKinney*, 394 F.3d 710, 712-13 (9th Cir. 2005); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). As a result, no

reasonable deputy could believe that such conduct was permitted under the Eighth Amendment, and much less under the Fourteenth Amendment. In sum, accepting plaintiff's evidence as true and drawing all inferences therefrom in his favor, there is a genuine issue of fact that Crook violated his constitutional rights, and Crook is not entitled to summary judgment either on the basis of qualified immunity or on the grounds that he did not violate plaintiff's constitutional rights.

Conversely, as Crook disputes the material factual questions of whether he slammed plaintiff's head into the windowsill at all, whether plaintiff was physically resisting or threatening him, and whether he twisted and bent plaintiff's arms nearly to the point of breaking while plaintiff was underneath him on the ground, plaintiff is also not entitled to summary judgment on his excessive force claim against Crook.

### 2. **Defendant County of Sonoma**

Plaintiff also names the County of Sonoma as a defendant.[1] Local government entities are "persons" subject to liability under 42 U.S.C. 1983 where official policy or custom causes a constitutional tort. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). The County cannot be held liable simply because it was Crook's employer. *See id.* at 691 (under no circumstances is there respondeat superior liability under Section 1983, i.e. solely because one is responsible for the actions or omissions of another). Plaintiff offers no evidence of any official policy or custom of the County, let alone any such policy or custom that caused the use of excessive force alleged in the complaint. Plaintiff also makes no allegation in his complaint specific to the County, nor does he offer any argument in his opposition and cross-motion that the County is liable. Accordingly, the County of Sonoma is entitled to summary judgment on plaintiff's claims.

### **CONCLUSION**

For the reasons set out below, defendants' motion for summary judgment (docket number 20) is **DENIED IN PART AND GRANTED IN PART**. Summary judgment is **GRANTED** in

---

[1] Plaintiff actually named the Sonoma County Jail as a defendant, but defendants have indicated that the County of Sonoma is the name of the correct entity that owns and runs the jail.

7

favor of the County of Sonoma. Summary judgment is **DENIED** as to plaintiff's claims against defendant Deputy Matthew Crook. Plaintiff's cross-motion for summary judgment (docket number 29) is **DENIED**. Plaintiff's motion to strike the declarations of John Naiman and Bonnie Freeman (docket number 30) is **DENIED** as unnecessary because such declarations were not necessary to the resolution of defendants' motion for summary judgment.

This matter is ready for trial on the excessive force claim upon which defendant Crook has been denied summary judgment. The plaintiff being in need of counsel to assist him/her in the trial of this matter, and good and just cause appearing, this case is referred to the Federal Pro Bono Project for location and of pro bono counsel. Upon an attorney being located to represent plaintiff, that attorney shall be appointed as counsel for plaintiff in this matter until further order of the court. All proceedings in this action are stayed until four weeks from the date an attorney is appointed to represent plaintiff in this action.

If plaintiff has an attorney who is already assisting him in this matter, and he wishes to have that attorney represent him, plaintiff shall file a notice of substitution of attorney.

**IT IS SO ORDERED.**

Dated: February 8, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.08\KRAH0038.MSJ.wpd